**[REDACTED] AFFIDAVIT OF SPECIAL AGENT LAURA SMITH IN SUPPORT OF
CRIMINAL COMPLAINT AND SEARCH WARRANT APPLICATIONS**

I, Laura Smith, being first duly sworn, hereby depose and state as follows:

1.      I am a Special Agent for the Federal Bureau of Investigation ("FBI") assigned to
the Boston, Massachusetts Field Office.  I am currently assigned to a squad that investigates
economic crimes, including various forms of corporate fraud.  As a federal agent, I am
authorized to investigate violations of the United States law and to execute warrants issued under
the authority of the United States. I hold a Bachelor's degree in Criminal Justice-Economic
Crimes Investigation and a Master's degree in Accounting.

2.      I am presently assigned as case agent on an investigation of alleged embezzlement
from Mariposa Holdings Group, Inc., ("Mariposa") by DAVID FONDOTS and others.  As set
forth below, I have probable cause to believe that, beginning no later than December 2014, in
Massachusetts and elsewhere, DAVID FONDOTS, engaged in a scheme to defraud Mariposa by
misappropriating company funds for his personal benefit and used wires in furtherance of the
scheme.  Specifically, DAVID FONDOTS caused Mariposa to pay significant sums of money
directly to himself, to a family member (Family Member A), and to two companies Family
Member A controls – (1) Ladybird Lingerie ("Ladybird") a/k/a Nantucket Lingerie, Inc.; and (2)
Terra Sourcing Group, a/k/a Terra Staffing or Terra Recruiting ("Terra").  The misappropriated
funds obtained by DAVID FONDOTS were used to pay personal expenses for the couple and
their family to include car payments, legal fees, travel, and various family expenses.

3.      Based on my training and experience, I am familiar with federal criminal laws and
know that it is a violation of Title 18, United States Code, Section 1343 for a person having
devised a scheme or artifice to defraud or to obtain money or property by means of false or

1

fraudulent pretenses, representations, or promises, to transmit or cause to be transmitted by means of wire communication in interstate or foreign commerce, and writing, sign, signal, picture, or sound for the purpose of executing such a scheme or artifice to defraud.  Having said so, I make this affidavit in support of a criminal complaint charging DAVID FONDOTS with wire fraud, in violation of Title 18, United States Code, Section 1343.

4.      I also make this affidavit in support of an application for a warrant to search a laptop computer (the "Equipment") that is in the possession of law enforcement investigators, as described in Attachment A.  There is probable cause to believe that the Equipment contains evidence, fruits, and instrumentalities of the crimes listed above, as described in Attachment B.

5.      The Equipment is currently in the possession of the Federal Bureau of investigation, and is being stored at its facilities in Chelsea, Massachusetts.  Investigators obtained the Equipment in the following way:  It was taken by the Cleveland Police Department ("CPD") pursuant to a search incident to an arrest of DAVID FONDOTS on an unrelated charge and then later provided to the FBI.

6.      Therefore, while the investigators might already have all necessary authority to examine the Equipment, I seek this additional warrant out of an abundance of caution to be certain that its search will comply with the Fourth Amendment and other applicable laws.

7.      The information contained in this affidavit is based upon information received by me, from other investigators, physical surveillance, witnesses, documents, and my experience and training as a Special Agent.  I have not included each and every fact known to me about this investigation.  Rather, I have included only those facts that I believe are sufficient to establish probable cause.

### *PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED*

### Background

8.      DAVID FONDOTS and Family Member A are residents of Westford, Massachusetts.  DAVID FONDOTS is the former CEO and co-founder of Mariposa, a Massachusetts-based start-up company established in 2014.

9.      Mariposa provided a streaming music service for mobile phone users and also had a ring-tone business.  Mariposa was founded by DAVID FONDOTS, Founder 1, and Founder 2 with financing from Investor 1, among others.

10.     DAVID FONDOTS had meetings with the members of the Board of Directors, which included Investor 1 and Founder 1, several times a year.  At these meetings, and at other times, DAVID FONDOTS provided updates about the company's finances, employees, progress, and future plans.  Founder 1 also worked for the company and spoke with DAVID FONDOTS by telephone almost on a daily basis.  According to Founder 1 and Investor 1, Mariposa employees were located all over the world; and DAVID FONDOTS was the only US-based employee.  As CEO of Mariposa, DAVID FONDOTS's primary responsibilities included raising investor funds and handling the company's finances.  Both Founder 1 and Investor 1 report that DAVID FONDOTS had sole access to and control over Mariposa's accounting records. Founder 1 sometimes watched DAVID FONDOTS prepare spreadsheets on the company's finances for presentations.  Bank records also show that DAVID FONDOTS had signature authority on all of Mariposa's bank accounts.  As part of his financial duties, DAVID FONDOTS was responsible for receiving vendor invoices, paying bills, initiating wire transfers and handling all financial aspects of the company.  DAVID FONDOTS was employed by Mariposa from approximately

3

October 2014 until his resignation on April 22, 2016.

11.     According to records of the Secretary of the Commonwealth of Massachusetts Corporations Division, Family Member A is the President, Director, Treasurer, and Secretary of Ladybird, a lingerie boutique located in Nantucket, MA.  Family Member A has sole signature authority over Ladybird bank accounts held at Citizens Bank.  Investor 1 reported that Family Member A was never included on the list of Mariposa employees provided by DAVID FONDOTS to the Board of Directors and, to the best of Investor 1's knowledge, never performed any services for Mariposa.

12.     On or about March 7, 2016, DAVID FONDOTS traveled to Cleveland, Ohio on a business trip paid for by Mariposa, to meet with potential investors.  On or about March 8, 2016, the CPD, Sex Crimes & Child Abuse Unit obtained information alleging that DAVID FONDOTS had child pornography stored on a laptop and other portable electronic devices in his hotel room. Later that day, the CPD arrested DAVID FONDOTS and charged him with one count of "Pandering Obscenity Involving a Minor."

13.     CPD also obtained a search warrant for DAVID FONDOTS' hotel room and seized several electronic items.  Included in the seizure were an Apple MacBook Pro laptop, multiple cell phones, thumb drives, SIM cards and other electronic devices.  CPD searched the equipment for evidence relating to the child pornography charges.

14.     On or about March 10, 2016, DAVID FONDOTS was released from custody and the Ohio charge against him was later dismissed.

15.     On or about August 22, 2016, Investor 1 reported to the United States Attorney's Office that DAVID FONDOTS embezzled from Mariposa.  Investor 1 provided a copy of a civil

complaint filed by Mariposa alleging embezzlement by DAVID FONDOTS.  The civil suit also brought action against Family Member A for assistance in the embezzlement scheme.  In or around December 2017, Mariposa settled the civil suit for approximately $182,000.

16.     On or about July 28, 2017, the CPD provided the items seized from DAVID FONDOTS to the FBI.  I have preserved those items in evidence but have not yet undertaken any search of these electronic materials for evidence relating to this investigation.

## The Scheme to Defraud

17.     Between on or about October 18, 2014 and April 22, 2016, DAVID FONDOTS misappropriated at least approximately $205,583 from Mariposa.  These amounts were in addition to authorized salary and other business expenses that were permitted to be paid to DAVID FONDOTS.  The scheme to embezzle funds from Mariposa included but was not limited to the following unauthorized transfers of Mariposa funds:

   a.     $57,280 to bank accounts controlled by Family Member A;

   b.     $21,000 directly to Family Member A's lingerie business, Ladybird;

   c.     $50,875 through payments to the company Terra that was used for expenses unrelated to Mariposa;

   d.     $70,428 through payments to the company Terra ostensibly for staffing services provided by a fictitious person; and

   e.     $6,000 to Person B, who has no business relationship with Mariposa.

## Payments to FAMILY MEMBER A

18.     From on or about July 1, 2014 to March 2, 2016, DAVID FONDOTS misappropriated approximately $57,280 in Mariposa funds by making payments to bank accounts controlled by Family Member A and payments on his/her behalf.

19.     From on or about July 1, 2014 to November 4, 2014, DAVID FONDOTS wrote four checks made payable to Family Member A from a Mariposa Bank of America account number ending 6514 (BOA#6514).  In order to conceal the payments, DAVID FONDOTS did not record these transactions in the accounting spreadsheets that he provided to others at Mariposa.  A review of bank records reveals these checks were deposited into Family Member A personal Middlesex Savings Bank account number ending -6377 ("MSB#6377"). Family Member A had sole signatory of the account.

20.     One of the checks reflected the memo "Loan to of NLI."  Based on my investigation, I believe this to be a reference to Family Member A's business – Nantucket Lingerie Inc.

21.     From on or about June 29, 2015 to March 2, 2016, DAVID FONDOTS also caused Mariposa funds to be wired from Mariposa Citibank accounts ending in 3836 (Citi#3836) and 3844 (Citi#3844) to Family Member A's MSB#6377 account and to and entity called Curve Expo[1] on behalf of Family Member A and his/her business as set forth below:

| From | Date | Amount | Description | To | Entry in Accounting Records |
|------|------|--------|-------------|-----|------------------------------|
| Mariposa Citi# 3836 | 06/29/2015 | $6,878.75 | Wire to Curve Expo | Curve Expo Account #026006237 | Think Research |
| Mariposa Citi# 3844 | 07/02/2015 | $4,725.00 | Debit-Mid Month Pay | Family Member A MSB#6377 | David Fondots |

---

[1] Curve Expo is an intimate apparel and swim trade show held on the east coast of the United States and has never had a business relationship with Mariposa.

6

| | | | | Family Member A MSB#6377 | |
|---|---|---|---|---|---|
| Mariposa Citi# 3844 | 07/15/2015 | $4,725.00 | Wire to Family Member A | Family Member A MSB#6377 | David Fondots |
| Mariposa Citi# 3836 | 09/17/2015 | $4,750.00 | Wire to Family Member A | Family Member A MSB#6377 | David Fondots |
| Mariposa Citi# 3844 | 10/05/2015 | $4,725.00 | Wire to Family Member A | Family Member A MSB#6377 | Think Research |
| Mariposa Citi# 3844 | 10/14/2015 | $4,725.00 | Wire to Family Member A | Family Member A MSB#6377 | Think Research |
| Mariposa Citi# 3844 | 10/30/2015 | $4,725.00 | Wire to Family Member A | Family Member A MSB#6377 | Think Research |
| Mariposa Citi# 3844 | 11/09/2015 | $4,725.00 | Wire to Family Member A | Family Member A MSB#6377 | David Fondots |
| Mariposa Citi# 3836 | 12/01/2015 | $4,725.00 | Wire to Family Member A | Family Member A MSB#6377 | David Fondots |
| Total | | $44,703.75 | | | |

22.     A review of wire transfer records revealed that the wire transfers were set up and approved by DAVID FONDOTS.  DAVID FONDOTS made false entries in Mariposa's accounting records, which he provided to Mariposa's founders and Investor 1. The false entries indicate that some of these payments had been made to Think Research, a vendor used by Mariposa.

23.     Think Research is a legitimate business entity with whom Mariposa had a business relationship.   Founder 1 reported that Think Research did not receive any of the payments that were purportedly made to it.  A review of bank records revealed these wires transfers, listed as being for the benefit of Think Research, were deposited directly into Family Member A's MSB#6377 account.

**Payments to Ladybird**

24.     DAVID FONDOTS also misappropriated approximately $21,000 in Mariposa

funds by making payments directly to and on behalf of Family Member A's lingerie

company Ladybird (a/k/a Nantucket Lingerie, Inc.).  On or about May 25, 2015, DAVID

FONDOTS wrote check 1042, payable to "NL Inc." in the amount of $21,000 from

Mariposa.  Bank records show this check was deposited into a Citizens Bank ending in 2371

in the name of Nantucket Lingerie.

25.     In an attempt to conceal this transaction, DAVID FONDOTS made an entry

in Mariposa's accounting records in the name of "7DIGITAL." 7DIGITAL is a legitimate

business entity with whom Mariposa did business. Founder 1 reported that 7DIGITAL did

not receive any of the payments that were purportedly made to it.

**Payments of DAVID FONDOTS and FAMILY MEMBER A Personal Legal Expenses**

26.     DAVID FONDOTS transferred a total of $50,875.00 of Mariposa funds to pay for

his own and his wife's legal expenses for several legal disputes unrelated to Mariposa.

*Payments to Attorney 1 for Unrelated Civil Cases*

27.     From on or about December 9, 2014 to on or about April 24, 2015, DAVID

FONDOTS misappropriated $20,381.00 of Mariposa funds in order to pay Attorney 1.  Court

records reflect that Attorney 1 handled three civil cases and the voluntary bankruptcy filing of

Resort Boutique International Inc., another company controlled by Family Member A.

28.     On or about December 9, 2014, DAVID FONDOTS initiated checks #1012 and #1013 from Mariposa payable to Terra totaling $19,897.00.  Both checks were deposited together on December 12, 2014 into Middlesex Savings Bank account number ending in 8939 (MSB#8939) held in Terra and Family Member A's names.  Only Family Member A has signatory authority over this account.

29.     On or about December 16, 2014, check #4042 was issued from the MSB#8939 account made payable to Attorney 1 in the amount of $20,000.  If not for the two checks from Mariposa, Terra check # 4042 payable to Attorney 1 would not have cleared and MSB#8939 would have been overdrawn.

<em>Payments to Attorney 2 for Unrelated Civil Case</em>

30.     Between on or around April 6, 2015 and April 22, 2015, DAVID FONDOTS wrote three checks- #1011, #0115 and #1018 from Mariposa payable to Terra totaling $17,905.00.  All three checks were deposited into the MSB#8939 account.  The handwriting on the deposit slips is consistent with that of Family Member A.  The funds were then used to pay Attorney 2, an attorney representing the plaintiff in a civil case filed against another company owned by Family Member A called Nicole-Marie Fashion, LLC.  The lawsuit alleged that the plaintiff sold her business to Family Member A and was not fully paid for the sale. This case is unrelated to Mariposa.  On or about April 22, 2015, Family Member A initiated an in-person wire transfer in the amount of $13,312.50 from the MSB#8939 account to an account held in the name of the Law Office of Attorney 2.  The receiving bank account for Attorney 2 was located in Providence, Rhode Island.  If not for the three checks from Mariposa, this wire payable to Attorney 2 would have not cleared causing MSB#8939 to be overdrawn.

31.     A review of activity occurring in MSB#8939 indicates this account was used for the sole purpose of receiving funds from Mariposa to pay expenses of DAVID FONDOTS and Family Member A that did not benefit and were unrelated to Mariposa.

*Use of Mariposa funds to pay for DAVID FONDOTS' criminal bail*

32.     On or about March 15 and 16, 2016, following his arrest, DAVID FONDOTS used $12,589.00 of Mariposa funds in order to pay for his bail on these charges.  He used the Mariposa Citi #3836 account to pay Dawg Town Inc, the Registered Agent for ABC Bail Bonds located in Cleveland, Ohio.  These charges were unauthorized by Mariposa.

33.     DAVID FONDOTS did not report his arrest or use of Mariposa funds to the Mariposa founders or Board of Directors.  Representatives of Mariposa learned of the arrest later as a result of someone reporting the coverage of the arrest in a news site, Cleveland.com.

**Other Payments to Terra/ "Marie Gomez"**

34.     On or around December 2, 2014 to on or around April 15, 2016, DAVID FONDOTS also misappropriated approximately $70,428 from Mariposa by making payments to an entity known as Terra -- purportedly for administrative services provided by an individual named Marie Gomez aka Marie Bares ("Gomez").   DAVID FONDOTS listed Gomez in presentations to the Founders and Investors as a person receiving payments for administrative services from Mariposa.  During my investigation, Founder 1 reported that s/he believed Gomez was hired by Mariposa as a contractor, through Terra.  Founder 1 recalled it was unusual that Gomez never responded to e-mails from Mariposa employees and s/he never actually spoke to any person purporting to be Gomez.

35.     DAVID FONDOTS also made representations to Founder 1 and other Mariposa representatives that Terra was a staffing company located in Connecticut that DAVID FONDOTS' previous employer used for staffing purposes.  According to open source research; however, there does not appear to be any legitimate company website or information for a company called Terra that specializes in staffing.

36.     Mariposa representatives later learned through the civil proceedings with DAVID FONDOTS and Family Member A that Gomez was not a real person, rather an alias used by DAVID FONDOTS and Family Member A to take additional funds from Mariposa.  In fact, during the civil proceedings, Family Member A and DAVID FONDOTS' attorney admitted that Gomez is not a real person, but a "fiction" and "virtual marketing person" and there was no real Gomez.  The attorney claimed Gomez was a name used by Family Member A and Family Member A's sibling, when they purportedly provided staffing services to Mariposa and others.

37.     A total of 22 payments were made to Terra; however, the investigation revealed that no staffing or other services were performed by Terra for Mariposa.  The 22 payments were made in the form of wire transfers and checks, and were deposited into two accounts entitled "[Family Member A] D/B/A Terra Sourcing Group" at Middlesex Savings Bank and "[Family Member A] D/B/A Terra Sourcing Group" held at Citizens Bank.  According to bank records obtained for these two accounts, Family Member A has sole signature authority over both accounts.

38.     On or about May 1, 2015, DAVID FONDOTS made a false entry in Mariposa's accounting spreadsheets to disguise a payment to Terra by listing it as a payment to a law firm in New York, New York with whom Mariposa did business.

**Payments to Margarita Ramirez**

39.     DAVID FONDOTS also misappropriated approximately $6,000 of Mariposa funds by initiating two unauthorized wire transfers to an individual named [Person B].  Person B was never an employee or vendor of Mariposa and therefore had no legitimate reason to receive funds from Mariposa.  The wires, both in the amount of $3,000 were initiated June 18, 2015 and July 28, 2015.  Both wires were sent to Person B's bank account at Banco de Bogota Gustavo Eduardo Fontecha.

40.     Open source research indicates that an individual by the name of Person B is associated with a shipping company located in Colombia.  Open source findings included two bills of lading which indicated Person B shipped two packages to Ladybird.  The first bill of lading pertained to a package weighing approximately 15.64 kg and having a value of $558. This package was shipped on August 1, 2015 to a consignee named "Mariposa Holding Group – Nantucket Lingerie" having an address of 7 Center Street, Nantucket, MA.  The second bill of lading pertained to a package weighing approximately 23.69kg and having a value of $1,337. This package was shipped August 1, 2017 to a consignee named Ladybird in Nantucket.

*PROBABLE CAUSE TO BELIEVE THAT THE EQUIPMENT CONTAINS EVIDENCE, FRUITS, AND INSTRUMENTALITIES*

41.     Based on my investigation, there is probable cause to believe that the Equipment contains evidence, fruits, and instrumentalities of the crime described above.

42.     As described above, when DAVID FONDOTS was arrested by CPD, they seized an Apple MacBook Pro laptop.  According to Investor 1, DAVID FONDOTS used an Apple laptop purchased by Mariposa to perform tasks as CEO of the company.  Investor 1 stated s/he communicated with DAVID FONDOTS through cell phone and email regarding Mariposa

12

matters.  Investor 1 believed the laptop seized by CPD was the laptop purchased by Mariposa because DAVID FONDOTS was on a business trip and was supposed to meet with investors at the time of the seizure.  Investor 1 and Founder 1 also reported that they observed DAVID FONDOTS use laptop computers to carry out business functions for Mariposa, including to make presentations to them and others.

43.     Based on information provided by Investor 1 and Founder 1, it is likely the laptop seized by CPD contains Mariposa purchased software, work product, business records, communication and other evidence, fruits and/or instrumentalities of the embezzlement DAVID FONDOTS committed against Mariposa.

44.     As discussed above, the equipment, as described in Attachment A, is currently being stored by investigators at their facilities.  From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

45.     From my training, experience, and information provided to me by other agents, I am aware that businesses frequently use electronic equipment to carry out, communicate about, and store records about their business operations.  These tasks are frequently accomplished through sending and receiving business-related e-mail; drafting correspondence and other business documents such as spreadsheets and presentations; scheduling business activities; keeping a calendar of business and other activities; arranging for business travel; storing pictures related to business activities; purchasing and selling inventory and supplies online; researching

online; and accessing banking, financial, investment, utility, and other accounts concerning the movement and payment of money.

46.     From my training, experience, and information provided to me by other agents, I am aware that individuals that engage in embezzlement, frequently use computer equipment, to facilitate their illegal activities, including by making false entries in accounting programs.

47.     From my training, experience, and information provided to me by other agents, I am aware that businesses and their executives commonly store records of the type described in Attachment B in computer hardware, computer software, and storage media.

48.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet.  This is true because:

a.      Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost.  Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

b.      Even after files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time.  In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files.  It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d.      Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."  The browser often maintains a fixed amount of hard drive space devoted to these files,

and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

e.      In addition, based on my knowledge, training, and experience, I know that businesses and businesspeople often retain correspondence, financial, transactional, and other business records for years to identify past customers and vendors for potential future transactions; keep track of business deals; monitor payments, debts, and expenses; resolve business disputes stemming from past transactions; prepare tax returns and other tax documents; and engage in other business-related purposes.

## CONCLUSION

49.      Based on the information described above, I have probable cause to believe that

on or about April 22, 2015, June 18, 2015 and July 28, 2015, DAVID FONDOTS committed

wire fraud, in violation of Title 18, United States Code, Section 1343.

50.      Based on the information described above, I also have probable cause to believe

that evidence, fruits, and instrumentalities of DAVID FONDOTS crime, as described in

Attachment B, are contained within the Equipment described in Attachment A.

Sworn under the pains and penalties of perjury.


_____
Laura Smith
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me
 On _____, 2019



_____
JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE